# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-0392V
UNPUBLISHED

|  |  |
|---|---|
| IRENE RUSSANO,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: June 4, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Injury (SIRVA) |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Zoe Wade, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On March 14, 2018, Irene Russano filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu") vaccine she received on November 17, 2015. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $80,060.54, representing $80,000.00 for actual pain and suffering, plus $60.54 for past unreimbursed expenses.

---

[1] Although this Decision has been deemed unpublished, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Relevant Procedural History

A year after this case was initiated, Respondent filed his Rule 4(c) report in March 2019, conceding that Petitioner was entitled to compensation. (ECF No. 34). A ruling on entitlement was issued the same day. (ECF No. 35). Over the next year, the parties attempted to reach an agreement regarding the amount Petitioner was due for her damages, but were unsuccessful. Accordingly, on December 23, 2019, a scheduling order was issued setting a schedule for the parties to file briefs on damages. (ECF No. 62, 64).  The parties filed their respective briefs (ECF Nos. 67 ("Br.") and 69 ("Opp.")). I subsequently proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. (ECF. No. 68). That hearing was held on May 29, 2020,[3] and the case is now ripe for a determination.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) report. In brief summary, Ms. Russano received the flu vaccine in her left shoulder on November 17, 2015 at Walgreens Pharmacy. Ex. 1 at 1-2. She thereafter presented to her primary care physician on December 7, 2015, with complaints of left shoulder pain and limited range of motion to her left shoulder since receiving the vaccine the month before. Ex. 3 at 32-33.

Petitioner subsequently visited an orthopedic surgeon on January 13, 2016, who diagnosed her with a left shoulder subacromial impingement. Ex. 9 at 1-2. An MRI performed in February 2016 confirmed the injury, and Ms. Russano was prescribed an anti-inflammatory and referred for formal physical therapy ("PT"). Ex. 5 at 72-73, Ex. 8 at 1-2. She began physical therapy on April 15, 2016, at which time she rated her left arm pain severe, a 9 out of 10, and attended 23 PT sessions until she was discharged on July 13, 2016, by which time she showed improvement, although she continues to experience pain and aches, plus a 20 percent reduction in range of motion. Ex. 14 at 1-3, 24, 58, 68-71; Ex. 15 at 4.

## III.    The Parties' Arguments

### a.  Petitioner

Ms. Russano seeks an award in the total amount of $95,060.54, consisting of $95,000.00 as compensation for her pain and suffering, plus $60.54 for past unreimbursable medical expenses (a sum that Respondent does not contest).  Br. at 15.

[3] At the end of the hearing held on May 29, 2020, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

To support her pain and suffering request, Petitioner stressed the degree to which her injury impacted her life beyond what is, or would be, reflected in her medical records. (ECF No. 8); Ex. 15 at 1-2. She argued that she has endured "a substantial amount of pain and suffering as a result of her SIRVA," that her pain was immediate and intense, and that she endured her symptoms for at least eight (8) months. Br. at 8.

Petitioner has also emphasized that her shoulder movement deficits were exacerbated by her history of breast cancer. Br. at 11. She was unable to use her right (uninjured arm) due to lymphedema that she developed years prior after a lumpectomy on her breast. *Id*.; Ex. 15 at 2-3. She also argued that she was unable to sleep on her left side for a prolonged time. *Id*.; Ex. 15 at 4. The constant sleeping on her right side, as a result, caused her to develop chondrodermatitis nodularis (a common inflammatory condition of the skin on the outer ear) on her right superior helix, which necessitated multiple cortisone injections for relief. *Id*.; Ex. 4 at 4; Ex. 31 at 4.

During the hearing and in her brief, Petitioner discussed prior SIRVA cases that involved injured claimants with similar fact patterns, and thus argued that an award of $95,000.00 was reasonable and appropriate in light of such similar determinations. Brief at 13-14.

### b. Respondent

Respondent maintains that a pain and suffering award of $55,000 is appropriate, given the overall limited scope and nature of Ms. Russano's injuries. Opp. at 1, 12-13. Petitioner was prescribed one course of Prednisone, participated in only 23 PT sessions, and received one steroid injection. As a result, by July 1, 2016 (nearly eight months later), she had 80 percent improvement of her pain. *Id*. at 11. Respondent also characterized Ms. Russano's range of motion of her left shoulder and MRI findings as mild, stressing that she never underwent surgery, and that the timeframe of her injury was significantly shorter than the average of 14 months in proffered SIRVA cases resulting in lower pain and suffering awards. Respondent also argued that once Ms. Russano began physical therapy for her injury, her recovery was relatively rapid.

In addition, Respondent argued at hearing that there were similarities between Ms. Russano's circumstances and those of the petitioner in a recent case in which a special master decided a disputed pain and suffering award, *Sherbine v. Sec'y of Health and Human Servs*., No. 17-413, 2020 WL 1933136 (Fed. Cl. Spec. Mstr. Mar. 27, 2020). In *Sherbine*, a 65-year-old petitioner received a flu vaccine in her left shoulder and was later diagnosed with left rotator cuff syndrome and bicep tendinitis. Respondent argued that the severity of pain the petitioner in *Sherbine* suffered was much more severe than the level of pain Ms. Russano suffered in this case, yet that Petitioner was only awarded $70,000 for her actual pain and suffering. Thus, a lower award in this case is warranted.

IV.     **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary."   § 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

In *Graves*, Judge Merrow rejected the special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap, criticizing this as constituting "the forcing of all suffering awards into a global comparative scale in which the individual Petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program, applying the statutory cap only thereafter. *Id*. at 595.

4

## V.    Appropriate Compensation in this SIRVA Case

### a.  Awareness of Suffering

Awareness of suffering is not typically a disputed issue in cases involving SIRVA. In this case, neither party has raised (nor am I aware of any issue concerning) Petitioner's awareness of suffering, and I find that this matter is not in dispute. Thus, based on the circumstances of this case, I find that Ms. Russano had full awareness of her suffering, and proceed to analyze the severity and duration of the injury.

### b.  Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Ms. Russano's medical records and her affidavit provide a description of the pain she experienced throughout the duration of her injury. As noted, and although she did not require surgical intervention, she endured 23 PT sessions, multiple X-rays, and MRI, and a cortisone injection, plus additional treatments for her ear inflammatory condition. Ex. 4 at 4; Ex. 5; Ex. 8 at 1-2; Ex. 9 at 1-2; Ex. 15; Ex. 31 at 4. Ms. Russano also has persuasively described how her injury interfered not only with her daily life, but how it impacted her overall health given her history of breast cancer. *See e.g.*, Ex. 5 at 45 (noting history of cancer as a complicating factor); Ex. 15 at 2-3.

Although Respondent correctly cites *Sherbine* as a comparable case, the petitioner therein attended far fewer PT sessions, and was deemed to have "suffered a moderately severe SIRVA injury" – a characterization that also applies to this case. *Sherbine,* 2020 WL 1933136 at 11. In addition, the petitioner in *Sherbine* did not have the compensatory injuries that Ms. Russano suffered (i.e., a history of breast cancer which affected use of the non-injured arm and chondrodermatitis nodularis necessitating multiple cortisone injections to her right ear). Thus, I find that a higher award than what was allowed in *Sherbine* is appropriate.

Accordingly, the complete record in this case supports the overall conclusion that Petitioner's pain was fairly significant in the beginning and progressively eased over time, with her movement impairment and pain largely (though not totally) improved within eight months of vaccination. Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$80,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### c.  Award for Past Unreimbursed Expenses

Ms. Russano requests $60.54 in past unreimbursable expenses. Brief at 9; Ex. 32. Respondent does not dispute this sum, and therefore Petitioner is awarded $60.54 for her past unreimbursable expenses.

## VI.    CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $80,060.54,** (representing $80,000.00 for Petitioner's actual pain and suffering and $60.54 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, Irene Russano.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

The clerk of the court is directed to enter judgment in accordance with this decision.[4]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.